UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | CRIMINAL ACTION |
| v. | ) ) | NO.  08-CR-10309-MLW |
| MICHELLE ROBINSON, | ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OF GLOBE NEWSPAPER COMPANY IN SUPPORT OF
MOTION TO REQUIRE JUDICIAL REVIEW OF VICTIM'S ANONYMITY**

## I.    INTRODUCTION

Globe Newspaper Company, Inc. respectfully submits this memorandum of law in support of its motion for judicial review of the government's decision to proceed with the prosecution of this case while keeping the identity of the alleged victim anonymous.

The issue presented by this motion ultimately requires the balancing of competing interests in maintaining a criminal judicial process that is open, transparent and subject to public review against the interest in protecting the privacy of alleged victims. To date, that balance unilaterally has been struck by the government. After the denial of its initial motion to seal all documents filed in this case, the government has obtained a probable cause finding, the issuance of a search warrant, and a pretrial detention order without disclosing the identity of the alleged victim.

Instead of identifying the alleged victim by name, the government's filings refer to him as a "local businessman" ("LB") or a "local business person" ("LBP"), who is a "married, business person with extensive involvement in the local business and charitable community." *See, e.g.,* Affidavit of Special F.B.I. Agent Nancy L.

A/72721943.1/0999991-0000981001

McCormick in Support of Issuance of Search Warrant ("Search Warrant Aff."), ¶ 7; Affidavit of Special F.B.I. Agent Nancy L. McCormick in Support of Complaint, ¶¶ 2, 5 ("Complaint Aff."). According to the government, LB has bank accounts at Mellon Bank and Bank of America, has an investment in property owned in California, and provides venture capital funding for several out-of-state and international start-up companies. Complaint Aff. ¶ 8, 11. The government also has disclosed that LB agreed to the defendant's extortionate demands "fearing that disclosure of his relationship with [the defendant] would damage his reputation, causing him personal and financial/business harm." Complaint Aff. ¶ 7.

In addition, during the detention hearing (a tape recording of which is available to the public), the following information was disclosed about LB:

- He is in his late sixties.

- He has financed start-up companies and is well known in the Boston area.

- He has business interests in the United States and Israel.

- He told the FBI that his relationship with the defendant was a "last hurrah."

There also are six sealed motions filed in the case. *See* Docket # 8, 9, 11, 17, 21 and 22. The docket does not indicate if those sealed motions contain information concerning the identity of LB.

As shown below, because of the importance of public scrutiny of the criminal justice system, the government's decision to prosecute a case without identifying the alleged victim is subject to judicial review under First Amendment and common law principles. Just as the Supreme Court has ruled that the First Amendment prohibits a blanket rule permitting juvenile victims of sex offenses to testify in closed proceedings, *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982), so too does the First Amendment, and the common law right of public access, require judicial oversight of the government's decision to prosecute a defendant charged

2

with extortion related to adult sex offenses without disclosing the victim's identity. The proper balance should be struck by the Court, balancing the benefits of an open criminal justice system against the privacy interests of alleged victims.

## II.   ARGUMENT

### A.   The First Amendment and the Common Law Require Judicial Review of the Government's Decision to Prosecute a Defendant with an Anonymous Victim.

This Court is well familiar with the constitutional and common law principles governing the public's right of access to criminal proceedings and to documents filed in connection with such proceedings. *See, e.g., United States v. Salemme*, 985 F.Supp. 193, 195-97 (D. Mass. 1997); *United States v. Sampson*, 297 F.Supp.2d 342, 344-46 (D. Mass. 2003); *United States v. Sampson*, 297 F.Supp.2d 340, 341 (D. Mass. 2003). As the First Circuit has stated:

> This circuit, along with other circuits, has established a First Amendment right of access to records submitted in connection with criminal proceedings. [Citation and footnote omitted.] The basis for this right is that without access to documents the public often would not have a 'full understanding' of the proceeding and therefore would not always be in a position to serve as an effective check on the system.

*Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 502 (1st Cir. 1989). *See also Federal Trade Comm'n v. Stand. Fin. Mgmt. Corp.*, 830 F.2d 404 (recognizing common law right of access to judicial documents).

"[P]ublic monitoring of the judicial system fosters the important values of quality, honesty and respect for our legal system." *Siedle v. Putnam Inv., Inc.*, 147 F.3d 7, 10 (1st Cir.1998) (citation and internal quotation marks omitted). Moreover, the "appropriateness of making court files accessible is accentuated in cases where the government is a party: in such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch." *Standard Fin. Mgmt.*, 830 F.2d at 410.

A/72721943.1/0999991-0000981001

The issue presented in this case requires the application of these principles in a somewhat different context: To what extent may the government unilaterally decide to proceed with a prosecution without disclosing to the Court or the public the identity of the victim of the defendant's alleged conduct -- conduct which the government contends warrants the deprivation of the defendant's liberty? More specifically, under what circumstances, if any, may the government obtain a finding of probable cause, the issuance of a search warrant, an order of pretrial detention, or even a conviction (by plea or by trial) without disclosure of an adult victim's identity?

This is an issue over which the Court must have authority. The Court exercises essentially the same power when it regulates the government's use of confidential informants. *See, e.g., Roviaro v. United States*, 353 U.S. 53, 60-61 (1957) ("Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way."). In the civil context, the Court exercises an analogous authority in deciding when litigants may proceed anonymously. *See Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008) ("[i]dentifying the parties to the proceeding is an important dimension of publicness. The people have a right to know who is using their courts."), *quoting, Doe v. Blue Cross & Blue Shield United,* 112 F.3d 869, 872 (7th Cir.1997) (Posner, J.). Indeed, absent such an inherent authority, courts would be powerless to restrain prosecutors from parading anonymous witnesses and victims into the courtroom to testify at trial. Whether the government may continue to use a pseudonym for the victim in this case therefore is a matter properly subjected to judicial review.

4

### B. The Prosecution and Resolution of this Case by Trial or by Plea Should Require the Disclosure of the Victim's Identity.

The Globe recognizes that the government's use of a pseudonym for the victim is based on a desire to protect the victim's privacy. As noted above, victims of a variety of crimes have similar, if not stronger, interests in privacy that must yield to the need for an open judicial system. In addition, although protecting a victim's privacy is a legitimate state interest, it is not by itself sufficient to overcome the constitutionally based interests in public criminal proceedings, particularly if, as it appears here, the victim may already be a public figure.

First, "as a general matter, '[o]penness in court proceedings may improve the quality of testimony.'" *Globe*, 457 U.S. at 609 n.26, *quoting, Gannett Co. v. DePasquale*, 443 U.S. 368, 383, 99 S.Ct. 2898, 2904, 61 L.Ed.2d 608 (1979). As the Supreme Court has recognized, "someone . . . who learns of the proceedings through publicity may be able to furnish evidence in chief or contradict 'falsifiers.'" *Richmond*, 448 U.S. at 570 n.8, citing 6 J. Wigmore, *Evidence* § 1834, p. 436 (J. Chadbourn rev. 1976). As Wigmore went on to observe, such witnesses "may not have been known beforehand to the parties to possess any information." Wigmore, *Evidence*, *supra*, p. 436. "Another advantage of this publicity [by printing the proceedings] . . . is the chance it affords to justice of receiving, from hands individually unknown, ulterior evidence, for the supply of any deficiency or confutation of any falsehood, which inadvertency or mendacity may have left or introduced." *Id.*, p. 437. In short, without judicial review, the unregulated practice of pursuing prosecutions based on anonymous victims not only reduces public oversight of the process but also eliminates potential sources of exculpatory and inculpatory evidence. *Waller v. Georgia*, 467 U.S. 39, 46 (1984) ("In addition to ensuring that judge and prosecutor carry out their duties responsibly, a public trial encourages witnesses to come forward and discourages perjury").

5

Moreover, as the Supreme Court also has ruled, any argument that particular categories of victims will only come forward if granted anonymity simply "proves too much," even in the most sympathetic of circumstances, *i.e.*, young victims of sex offenses:

> Surely it cannot be suggested that minor victims of sex crimes are the only crime victims who, because of publicity attendant to criminal trials, are reluctant to come forward and testify. The State's argument based on this interest therefore proves too much, and runs contrary to the very foundation of the right of access recognized in *Richmond Newspapers*: namely, 'that a presumption of openness inheres in the very nature of a criminal trial under our system of justice.'

*Globe*, 457 U.S. at 610, *quoting, Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573 (1980).

Even assuming that during the preliminary stages of a prosecution the privacy interests of a victim may outweigh the interests in public oversight, that balance shifts dramatically as the case proceeds to a final adjudication, whether by a trial or by way of a plea. Just as the public has a right to attend criminal trials, it also has a right of access to plea hearings and to plea agreements. *See In re Washington Post*, 807 F.2d 383, 389 (4th Cir.1986); *United States v. Haller*, 837 F.2d 84, 86-87 (2d Cir. 1988); *The Oregonian Publ. Co. v. United States District Court for the District of Oregon*, 920 F.2d 1462, 1465, 1467 (9th Cir. 1990). Indeed, the taking of a plea is one of the most common forms of adjudication of criminal litigation. *See e.g., Brady v. United States*, 397 U.S. 742, 752 (1970) (stating that, at the time, well over three-fourths of criminal convictions rested on guilty pleas).

As perhaps the "the sole occasion for public observation of the criminal justice system," *Richmond Newspapers*, 448 U.S., at 572, public scrutiny of the conduct of courts, prosecutors and defense counsel in connection with plea hearings serves important constitutional interests. *See Waller*, 467 U.S. 46-47 (because "suppression hearings often are as important as the trial itself," the proceedings trigger the right

6

to a public trial); *Press-Enterprise II*, 478 U .S. 1, 12 (1986) ("the preliminary hearing is often the final and most important step in the criminal proceeding" and triggers the First Amendment right of access). "Similarly, the absence of a jury, long recognized as 'an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge,' makes the importance of public access to a [plea] hearing even more significant." *Press-Enterprise II*, 478 U.S. at 12-13 (citation omitted).

It is the rare prosecution in which statements of the victim -- and thus his identity -- are irrelevant to the trial of a case or to the evaluation of a plea agreement. Similarly, an assessment of the victim may directly bear on issues such as sentencing and probation. *See generally United States v. C.R. Bard, Inc.*, 898 F.Supp. 287, 290, 292 (U. Mass. 1994) (quoting victims' statements in analyzing whether to accept plea agreement); *United States v. Davis*, 967 F.2d 516, 522-25 (11th Cir. 1992) (considering vulnerability of victim as sentencing factor).

The Globe does not pretend to know enough of the specifics of this case to predict all the ways in which the victim may be relevant to the Court's assessment of a plea agreement, sentencing, or other matters related to the case. It seems a fair assessment of the situation, however, to submit that statements of the victim, his credibility and, thus, his identity were important factors in the government's decision to prosecute and continue to be important to the ultimate resolution of this case. Under these circumstances, the Globe respectfully submits that the disclosure of the victim's identity is required.

Alternatively, the Globe requests that if any of the sealed motions filed in the case contain the victim's identity, the documents should be unsealed in accordance with the standards of the First Amendment and the common law. See *Pokaski*, 868 F.2d 497 *Stand. Fin. Mgmt. Corp.*, 830 F.2d 404.

A/72721943.1/0999991-0000981001

### III.   CONCLUSION

For the foregoing reasons, the Globe respectfully requests that its Motion for Judicial Review of Victim's Identity be granted and that, upon review, the victim's identity be made part of the public record in this case.

|  | **GLOBE NEWSPAPER COMPANY, INC.,** |
|---|---|
| **Of Counsel:** | By its attorneys, |
|  | /s/ Jonathan M. Albano |
| David E. McCraw, Esq. | Jonathan M. Albano, BBO #013850 |
| The New York Times Company | jonathan.albano@bingham.com |
| 18th Floor | **BINGHAM MCCUTCHEN LLP** |
| 620 Eighth Avenue | One Federal Street |
| New York, NY  10018 | Boston, MA  02110-1726 |
| (212) 556-4031 | 617.951.8000 |

Dated: October 23. 2008

### CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 23, 2008.

/s/ Jonathan M. Albano, BBO #013850
ionathan.albano@bingham.com

A/72721943.1/0999991-0000981001