UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,   ) | |
| ) | CRIMINAL ACTION |
| v.   ) | NO. 08-CR-10309-MLW |
| ) | |
| MICHELLE ROBINSON.   ) | |

**BP'S MEMORANDUM OF LAW IN SUPPORT OF HIS
OPPOSITION TO GLOBE NEWSPAPER COMPANY'S MOTION TO REQUIRE
JUDICIAL REVIEW OF VICTIM'S ANONYMITY**

**INTRODUCTION**

The Globe Newspaper Company, Inc. ("the Globe") has filed an extraordinary motion. Not content with publishing the facts surrounding the criminal charge in this case, the Globe seeks to force the government to name the victim (referred to in the indictment as "BP," a business person), who, ironically, was extorted by the defendant with threats of public exposure. Attempting to use the First Amendment as a club, the Globe aims to make a reality the very exposure that BP was so desperate to avoid and which was the critical part of the extortion alleged in the indictment.

The Globe's contention that it seeks a "balance" between the "competing interests in maintaining a criminal judicial process that is open, transparent and subject to judicial review" and the "interest in protecting the privacy of alleged victims" is belied by its unprecedented motion. Globe Br., 1. The Globe's brief is a recitation of general truths about the importance of the public's right of access to criminal proceedings. As admirable as these notions are, they have little bearing on the issue of whether the Court should order that BP's name be released to the public.

At issue here is neither a blanket statutory bar on public access to certain types of criminal proceedings nor a closed criminal proceeding. Rather, the only alleged encroachment on the public's interest in open courts is the use of a pseudonym in place of the first and last names of a victim of a crime. As described below, courts have historically allowed victims to remain anonymous where, as here, the exposure of their identity would invade their privacy and would in effect victimize them yet again. Moreover, the remedy sought does not involve making public sealed documents, but rather an unwarranted and unprecedented review of the government's decision. Indeed, the United States has appropriately taken steps here to protect the victim, consistent with Congress' directive that the victim's rights in the criminal justice system be carefully protected. *See* 18 U.S.C. §3771(a) and (c)(1).

## ARGUMENT

### I. THIS COURT HAS AUTHORITY UNDER THE CRIME VICTIM RIGHTS ACT AND COMMON LAW TO KEEP BP'S IDENTITY ANONYMOUS

This Court should not order the government to disclose BP's name. In all cases involving victims, the United States is obligated under the Crime Victim Rights Act ("CVRA") to treat victims with "fairness and with respect for the victim's dignity and privacy." 18 U.S.C. § 3771(a)(8). Senator Kyl, one of the CVRA's chief sponsors, made clear that "the broad rights articulated in this section are meant to be rights themselves and are not intended to just be aspirational." 150 Cong. Rec.. S10910 (daily ed. Oct. 9, 2004). Courts have held that where, as here, disclosure of information would cause damage to the victim, the CVRA requires such information to remain sealed.

In a case similar to the one before the Court (and not cited in the Globe's brief), *United States v. Patkar*, 2008 WL 233062 (D. Haw. Jan. 28, 2008), the victim, identified solely by a pseudonym, came forward to law enforcement after the defendant's extortion attempt. When the

Associated Press sought certain documents related to the investigation, the court held that 18 U.S.C. § 3771(a)(8) provides the victim with an "unquestionable right" to dignity and privacy and prohibits the disclosure of "materials that comprised the basis of the extortion such that if revealed, would cause damage to the reputation of the victim." *Id*. at *5. In *Patkar*, the Court reasoned that disclosing such materials to the press would "undermine the public interest in having victims of crimes – even those embarrassed by their conduct – report offenses to law enforcement" and "would certainly act as a deterrent to a victim reporting the commission of a crime." *Id*. at *6. *See also, United States v. Kaufman*, 2005 WL 2648070 (D. Kan. Oct. 17, 2005) (holding that the CVRA proscribed all forms of identification of the victims in a sexual misconduct case, including sketching for purposes of television). Here, BP was a victim of extortion by a person who threatened to publicly reveal his identity as her customer, causing public humiliation and irreversible damage to his reputation. In a bizarre twist, after the defendant has been arrested, the Globe now seeks the very exposure that she was threatening BP with and that he was so desperate to avoid. Such disclosure would surely fly in the face of the CLRA's requirement that BP be treated with respect for his "dignity and privacy."

Moreover, even outside the context of the CLRA, courts have allowed victims of crimes to be identified solely by pseudonyms in circumstances where, as here, a disclosure of their identities would constitute an invasion of privacy. For instance, in *United States v. Turner*, 367 F. Supp. 2d 319 (E.D.N.Y. 2005), the government filed charges against Turner for mail fraud, identifying the victims as John Does. The court ruled that in order to ensure that victims are afforded their rights, the government should file a list of their names with the court – but with an important caveat. The court noted that "the filing of such a list invades the privacy of victims who have no authority to prevent the government from proceeding with a prosecution and should

not be victimized by the criminal justice process itself. The fact that the complaint in this case uses pseudonyms strongly suggests that such a concern may be present here." *Id*. at 328. The court, therefore, held that a showing that a "victim has reason to fear public disclosure of identifying information" would constitute good cause for not filing that victim's name with the court. *Id*. at 328-329. Similarly, in *Globe v. Clerk of Suffolk County*, 2002 WL 202464 (Mass. Feb. 4, 2002), Globe newspaper filed a complaint asking for the termination of the impoundment orders of several cases dealing with allegations of sexual abuse. The court held that while the records should be made public, the victims' names should be redacted. The court stated that public revelation of the abuse "stigmatizes them as victims of such abuse, generates conversations that may re-open emotional wounds that had only begun to heal, and causes others, even those who mean well, to treat them differently." *Id*. at *6. The court held that protecting these alleged victims' compelling interest in privacy simply requires impoundment of their names and of any information that may reasonably be used to identify them. The court reasoned that

> the use of a pseudonym has been permitted in cases when, because of the risk of social stigmatization, the danger of physical harm, or the potential for psychological injury, the plaintiff wishes to avoid revealing his or her identity in public court records. . . .Indeed, in one of the most famous cases of the last fifty years - *Roe v Wade*, 410 U. S. 113 (1973) - the Supreme Court allowed the plaintiff to use a pseudonym so that she was not identified as having sought an abortion.

*Id*. at *7. Here, a disclosure of BP's name would certainly stigmatize BP. The very premise of the alleged crime in this indictment is that the defendant "recognized that public exposure . . . would subject him to significant reputational harm." Indictment, ¶5. Indeed, this case began when the defendant capitalized on BP's desire to protect his anonymity. Allowing BP to remain

anonymous would permit him to maintain his privacy while still allowing the public access to the basic facts of this case.

## II.     THE GLOBE HAS NOT ARTICULATED ANY BASIS FOR DISCLOSING BP'S NAME.

The Globe has not stated any cognizable basis for why this Court should reveal BP's identity and cause him precisely the kind of public humiliation and harm that the defendant threatened him with as part of her extortion scheme.  Indeed, the Globe fails to cite a single case where a victim of a crime who wished to remain anonymous and the government agreed to respect that right was then forced by the court to disclose his identity because a newspaper wanted it disclosed.  While the public's right to access criminal proceedings is undeniably important (although not unfettered), the cases cited by the Globe do not provide a shred of authority for the contention that a system of open courts prohibits the use of a pseudonym in place of the true name of a victim.

For instance, the Globe relies on *Globe v. Pokaski*, 868 F. 2d 497 (1st Cir. 1989), for its contention that BP's name should be disclosed because of an established First Amendment right of access to records submitted in connection with criminal proceeding.  Globe Br., 3.  But *Pokaski* involved a state statute that automatically sealed records of criminal cases ending with acquittal and is thus completely inapplicable to the present case, which involves not sealed records or an automatic ban on access, but rather the use of a single pseudonym in a single case. Similarly, the Globe extensively relies on *Globe v. Superior Court*, 457 U.S. 596 (1982), a case in which the Supreme Court struck down a Massachusetts statute barring press access to rape trials in which the victims are minors, for its assertion that BP's identity should be disclosed.  But *Globe v. Superior Court* was concerned with a statute that barred public access to an entire category of trials based on the age of the victim.  Here, the press is not barred from accessing the

proceedings – the sole item to which access is not granted is the name of the victim. The Globe's reliance on cases such as *Richmond v. Virginia*, 448 U.S. 555 (1980) and *Waller v. Georgia*, 467 U.S. 39 (1984) is equally misplaced: those cases dealt with the closing of a criminal trial and a suppression hearing, respectively – not with the use of a pseudonym to identify the victim of a crime.

While the Globe has loaded its brief with citations commending the American system of providing the public with a right to open courts, it has failed to demonstrate that the use of a pseudonym in this case would infringe that right. This case is not quarantined from the press and the public. Indeed, on October 11, 2008 the Globe published a story detailing defendant's extortion and her subsequent arrest. BP's anonymity does not prevent the public from access to the criminal proceedings in this case; rather, it strikes a balance between his right to privacy and the public's right to act as a check on the criminal justice system. Any other result would be unwarranted and would conflict with the rights afforded to crime victims set out in 18 U.S.C. §3771, *et seq*.

## CONCLUSION

For the foregoing reasons, BP requests that the Globe's Motion for Judicial Review of Victim's Identity be denied.

    BP,

    By his attorneys,

    /s/ *Donald K. Stern*
    Donald K. Stern, BBO # 479420
    dstern@cooley.com
    Cooley Godward Kronish LLP
    800 Boylston Street
    Boston, MA  02199
    617.937.2321

## **Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 10, 2008.

/s/ *Donald K. Stern*
