UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA        )
                                )
    v.                          )        Criminal No. 08-10309-MLW
                                )
MICHELLE ROBINSON               )

**MEMORANDUM IN SUPPORT OF MOTION TO RECONSIDER
COURT'S FEBRUARY 23, 2009 ORDER**

On February 23, 2009, the Court issued an Order ("Order"), "pursuant to the All Writs Act, 28 U.S.C. §1651," requiring Assistant United States Attorney Paul Levenson to compile a list of each attorney, agent, and other government employee to whom the identity of the victim had been disclosed in this case and ordering each such "Authorized Individual" not to disclose the victim's identity to anyone who is not also an Authorized Individual unless necessary for this case or any investigation or prosecution arising out of this case.  The Order also requires Assistant U.S. Attorney Levenson to obtain from each "Authorized Individual" an affidavit under oath that states that he or she has read the Court's Order and acknowledges that a willful violation of the Order may be deemed a criminal and/or civil contempt.  Discussing the proposed order with the parties at the defendant's change of plea and sentencing hearing, the Court stated that it wanted to ensure that both parties were on notice of the restrictions on disclosure of the victim's name and that there should be sanctions for anyone –

defendant or government – who disclosed that name.  2/20/09 Tr. 18-24.    The Court also suggested to the defendant that should the victim's identity be disclosed, the proposed restrictions on the government would help her persuade the Court that she was not the source of the disclosure.  2/20/09 Tr. 24-25.

Although the Court's Order coincides, in part, with precautionary steps that the United States represented that it intended to implement, the All Writs Act does not provide the Court with the authority to issue the Order.  Nor has the government agreed to the several key terms of the Order.  As discussed in more detail below, the government represents to the Court that, pursuant to its obligations under the Crime Victims' Rights Act, it has made, and will continue to make, its "best efforts" to ensure that no government employee discloses the victim's name except as the government may deem necessary in the performance of the government's duties and for legitimate law enforcement purposes. The Court's Order, however, imposes burdens on the government not authorized by the All Writs Act, or otherwise falling within the Court's supervisory authority, or required by the Crime Victims' Rights Act. Accordingly, the government respectfully requests that the Court withdraw its February 23, 2009 Order.

I.    **The All Writs Act does not authorize the Court's Order.**

> A.   *The All Writs Act provides the Court with limited authority to issue orders "necessary or appropriate" to aid its jurisdiction.*

As a preliminary matter, the All Writs Act ("Act") provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. §1651(a).  The Supreme Court has described the Act as a "legislatively approved source of procedural instruments designed to achieve the 'rational ends of law.'"  Price v. Johnston, 334 U.S. 266, 282 (1948), quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 273 (1942).  The Court has also repeatedly recognized a federal court's power under the Act "to issue such commands * * * as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained," and has applied the Act "flexibly in conformity with these principles." United States v. New York Tel. Co., 434 U.S. 159, 172 (1977).

Thus, in New York Tel., the Court held that the district court's order compelling the telephone company to aid federal law enforcement by providing the facilities and technical assistance necessary to implement the court's order authorizing pen registers was consistent with the All Writs Act.  Id. at 176.  Prohibiting the order, the Court said, would "frustrate the clear indication by

Congress that the pen register is a permissible law enforcement tool by enabling a public utility to thwart a judicial determination that its use is required." Id. at 177. The Court concluded that "[t]he power conferred by the Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice." Id. at 173-174.

In Price, the Supreme Court held that the All Writs Act authorized the circuit courts of appeals to command that a prisoner be brought into the courtroom to argue his own appeal in a case involving his life or liberty. 334 U.S. at 278, 284. The writ in such a case "may be necessary to the complete exercise of an appellate jurisdiction already existing," the Court said, and is "agreeable to the usages and principles of law." Id. at 281-284. The Supreme Court further held in Harris v. Nelson, 394 U.S. 286 (1969), that in "appropriate circumstances," a district court confronted by a petition for habeas corpus which establishes a prima facie case for relief may rely upon the Act to authorize the use of discovery procedures "reasonably fashioned to elicit facts necessary to help the court" dispose of the matter. Id. at 290. And in In re Grand Jury Proceedings, 626 F.2d 1051 (1st Cir. 1980), the U.S. Court of Appeals for the First Circuit held that the Act conferred authority on the district court to require the deposit of

evidence pending appeal when the witness in possession of the evidence was reasonably believed to be about to destroy it.  Id. at 1059.  Destruction of the evidence would have "marred the [First Circuit's] exercise of jurisdiction," the court stated, either "rendering moot the question today decided or making a mockery of our consideration of the government's case."  Id.

The All Writs Act "is not a jujube," however.  Trenkler v. United States, 536 F.3d 85, 97 (1st Cir. 2008).  That the Supreme Court has applied the Act "flexibly" does not mean that the Act provides courts with unlimited authority.  Rather, the Act constitutes "a residual source of authority to issue writs that are not otherwise covered by statute."  Pa. Bureau of Corr. v. U.S. Marshals Serv., 474 U.S. 34, 43 (1985); see Clinton v. Goldsmith, 526 U.S. 529, 537 (1999) (holding that the Act "invests a court with a power essentially equitable and, as such, not generally available to provide alternatives to other, adequate remedies at law."); Pa. Bureau of Corr., 474 U.S. at 43 (stating that the All Writs Act "does not authorize [federal courts] to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate.").

Moreover, the Act "confines the authority to the issuance of process 'in aid of' the issuing court's jurisdiction."  Clinton, 526 U.S. at 534.  The Act is available only in "those exceptional cases 'where, because of special circumstances, its use as an aid

to an appeal over which the court has jurisdiction may fairly be
said to be reasonably necessary in the interest of justice.'"
Price, 334 U.S. at 279, quoting Adams, 317 U.S. at 273.  The Act
"is not a grant of plenary power to the federal courts," and it
"does not authorize a court to order a party to bear risks not
otherwise demanded by law."  Plum Creek Lumber Co. v. Hutton, 608
F.2d 1283, 1289-1290 (9th Cir. 1979).

       *B.    The Court's Order is not "necessary or appropriate"*
             *in the "aid of its jurisdiction" in this matter.*

The Court's Order is beyond the scope of the Court's authority
under the All Writs Act.  First, the Order is not "in aid of" the
Court's jurisdiction.  28 U.S.C. §1651(a).  The Court clearly has
jurisdiction over both the defendant and her case – and will
continue to have jurisdiction over her throughout her term of
supervised release, during which she is not to disclose the
victim's identity.  Requiring the government to maintain a list of
who in the government knows the victim's identity – however
sensible an idea that may be – and to obtain affidavits from each
of those individuals thus is not in "aid" of the Court's
jurisdiction.  Should the government allege that the defendant has
violated the non-disclosure condition of her supervised release,
the Court will have jurisdiction over any revocation proceeding.
Even then, however, the issue for the Court will not be whether
someone in the government disclosed the victim's identity, but
whether the government has proved that the defendant disclosed the

victim's identity in violation of the conditions of her supervised release.

The Supreme Court in <u>Harris</u> stated that "the purpose and function of the All Writs Act [is] to supply the courts with the instruments needed to perform their duty, as prescribed by Congress and the Constitution." 394 U.S. at 300. The Court here already has the instruments it needs to perform its duty with respect to the non-disclosure provision of the defendant's plea agreement – it has jurisdiction over the case and, in the event of an alleged violation of the conditions of supervised release, it will have jurisdiction to determine whether the government has proved that the defendant did, in fact, disclose the victim's identity during her supervised release.[1] Because this Court has the necessary instruments to exercise its jurisdiction, this case is unlike those in which courts have found the issuance of a writ authorized by the Act. For example, in <u>Price</u>, the Supreme Court held that the court was authorized under the Act to order the production of a prisoner in court so that he could effectively present his appeal to the

---

[1] Moreover, even if the Court's Order could at some future date be construed to be in aid of the Court's jurisdiction, it is not now and is thus beyond the scope of the All Writs Act. <u>See</u> <u>In re Previn</u>, 204 F.2d 417, 418 (1st Cir. 1953) (declining to invoke the authority of the All Writs Act in order to review a district court's interlocutory order because the order "does not in any way tend to frustrate or impede [the court's] exercise of eventual appellate jurisdiction": "It is perfectly obvious that our potential jurisdiction is not now in need of any 'aid.'"). "Courts normally exercise their jurisdiction only in order to protect the legal rights of parties." <u>New York Tel. Co.</u>, 434 U.S. at 374 n.23.

court.  334 U.S. at 283-284.  The Court concluded that although a
prisoner does not have an absolute right to argue his own appeal,
the courts had the authority to decide whether the prisoner's
presence was essential to the proper disposition of the case and to
issue a writ.  Id.  In New York Telephone, the Court held that the
district court's order was necessary in aid of the court's
jurisdiction "to prevent nullification of the court's warrant and
the frustration of the Government's right under the warrant to
conduct a pen register surveillance."  434 U.S. at 374 n.23.  In
contrast, there is nothing exceptional or extraordinary about the
facts of this case that calls for the application of the Act.  See
Clinton, 526 U.S. at 534 (describing the All Writs Act as
authorizing use of "extraordinary writs");  Price, 334 U.S. at 285
(noting that the writ is available in "exceptional cases").

     Second, the Court's Order is beyond the scope of the All Writs
Act because it is not "necessary or appropriate" in aid of the
Court's jurisdiction.  28 U.S.C. §1651(a).  In Pa. Bureau of Corr.,
the Supreme Court held that in the absence of an express finding of
exceptional circumstances, neither the magistrate nor a district
court had authority under the All Writs Act to order the United
States Marshals to transport federal prisoners to the federal
courthouse to testify in an action brought by a state prisoner
against county officials under 42 U.S.C. §1983.  474 U.S. at 43.
The Court distinguished New York Tel. Co., Price, and Harris on the

ground that those cases "afforded resort to the All Writs Act to fill statutory interstices," whereas the habeas corpus statute already provided for a writ ad testificandum as a means of producing the prisoner-witness.  474 U.S. at 42-43 & n.7.  Here, too, the Court's Order is unnecessary because there already are legal mechanisms to ensure the defendant's compliance with the conditions of supervised release:  while on supervised release, the defendant is required to respond to the Probation Office's questions regarding her compliance with the terms and conditions of her supervised release, and the Court may compel her response.  See Docket #73, Judgment in a Criminal Case, Standard Conditions of Supervision, Conditions ##2, 3; see also 18 U.S.C. §§3583(a), 3563(b)(15), (17); U.S.S.G. §5D1.3(c)(2), (3).

In addition, as noted above, should the victim's identity be disclosed while the defendant is on supervised release, the government will bear the burden of investigating the disclosure and proving that the defendant was the source.  The mere possibility that an employee of the government might have disclosed the identity as well does not affect the government's burden of proof with respect to the alleged violation – that is, the government must prove that the defendant disclosed the name before the Court may revoke her supervised release.  The Court's Order is, thus, not necessary in light of the ultimate inquiry and represents an unwarranted intrusion into the Executive Branch.

Courts probing the scope of the All Writs Act have repeatedly stated that resort to the Act is only necessary and appropriate when a court's powers would be severely impaired or frustrated absent use of the Act.  See New York Tel. Co., 434 U.S. at 175. ("[W]e note, as the Court of Appeals recognized, that without the Company's assistance there is no conceivable way in which the surveillance authorized by the District Court could have been successfully accomplished."); Price, 334 U.S. at 280 (finding writ necessary when the court is satisfied that the prisoner should be produced to present oral argument before the court); Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 35 (1980) (finding writ appropriate when ""a party seeking issuance ha[s] no other adequate means to attain the relief he desires."); Harris, 394 U.S. at 299-300 (holding writ justified when the district court had no alternative means of providing an effective habeas corpus proceeding); In re Grand Jury Proceedings, 626 F.2d at 1059 ("Destruction of the evidence would have marred this court's exercise of jurisdiction, either rendering moot the question today decided or making a mockery of our consideration of the government's case.").  Failure to issue a writ in this case would not thwart the Court's power, nor would it make a mockery of the Court's consideration of any aspect of the case.  The Court has the authority to conduct a revocation hearing should the government allege that the defendant violated the non-disclosure condition or

any other condition of supervised release, regardless of the All Writs Act.

## II.   The Court's Order exceeds the scope of the Court's supervisory powers.

*A.   The Court's supervisory power is limited to circumstances where there is no effective alternative provided by rule, statute, or constitutional clause.*

For many of the reasons discussed above, the Court's Order also is beyond the scope of the Court's supervisory powers.  The Supreme Court has recognized that district courts have supervisory powers, "within limits, [to] formulate procedural rules not specifically required by the Constitution or the Congress, * * * to implement a remedy for violations of recognized rights* * *, to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury * * *, and finally, as a remedy designed to deter illegal conduct."  United States v. Hasting, 461 U.S. 499, 505 (1983).  Supervisory powers "are those which are 'necessary to the exercise of all others.'" Roadway Express, Inc. v. Piper, 447 U.S. 752, 764 (1980), quoting United States v. Hudson, 11 U.S. (7 Cranch) 32, 34 (1812); In re Grand Jury Investigation, 545 F.3d 21, 25 (1st Cir. 2008).

Among the limits on supervisory power is that it attaches only when there is no effective alternative provided by rule, statute, or constitutional clause.  United States v. Horn, 29 F.3d 754, 760 (1st Cir. 1994); see Bank of Nova Scotia v. United States, 487 U.S. 250, 254 (1988) ("[I]t is well established that even a sensible and

efficient use of the supervisory power is invalid if it conflicts with constitutional or statutory provisions."). In addition, when courts exercise their supervisory power, "they must respect the balance of interests struck by conventional application of the legal doctrines governing the particular problem in a particular case." United States v. Santana, 6 F.3d 1, 10 (1st Cir. 1993); see Hasting, 461 U.S. at 506-507 (reversals of convictions must be approached "with a view toward balancing the interests involved"). That is, even when courts may appropriately invoke their supervisory power, "the separation-of-powers principle imposes significant limits on it." United States v. Dominquez-Villa, 763 F.2d 1040, 1046 (9th Cir. 1984); see Matter of Grand Jury Subpoena of Rochon, 873 F.2d 170, 174 (7th Cir. 1989) ("As a threshold matter, a court may not exercise any supervisory power [over the Executive] absent a clear basis in fact and law for doing so. * * * A federal court that imposes sanctions on executive conduct that is otherwise permitted by the Constitution, a federal statute or a rule will most likely be invading the executive sphere.") (internal quotations omitted); United States v. Cox, 342 F.2d 167, 171 (5th Cir. 1965) (en banc) ("It follows, as an incident of the constitutional separation of powers, that the courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions."). Courts must use their supervisory powers

12

"sparingly," United States v. Santana, 6 F.3d 1, 9 (1st Cir. 1993),

and "with restraint and discretion."  Chambers v. NASCO, Inc., 501

U.S.  23,  44  (1991);  see  id.  at  64  (Kennedy,  J.,  dissenting)

("Inherent  powers  are  the  exception,  not  the  rule,  and  their

assertion requires special justification in each case.").

> B.   The Court's Order is not necessary in light of the
> availability of other statutory remedies to address the
> Court's concerns in this matter.

Here,  resort  to  the  Court's  supervisory  powers  is  not

necessary and is thus beyond the scope of those powers.  As noted

above, should the victim's name be disclosed, the question for the

Court will be whether the government has proved that the defendant

was the source of the disclosure, thereby violating a condition of

her supervised release.  The Court clearly has jurisdiction over

the  determination  whether  to  revoke  the  defendant's  supervised

release.  See Horn, 29 F.3d at 760 (limiting supervisory power to

circumstances that do not offer an effective alternative by rule,

statute, or constitutional clause).  The underlying investigation

into whether she made the disclosure is within the discretion of

the  Executive  Branch;  it  is  the  Executive  Branch  to  which  the

Constitution  grants  the  power  to  "take  Care  that  the  Laws  be

faithfully executed."  U.S. Const. art. II, §3; see In re United

States, 441 F.3d 44, 58 (1st Cir. 2006) (noting that investigatory

and  prosecutorial  decisions  are  usually  "made  outside  the

supervision of the courts," quoting Young v. United States ex rel.

<u>Vuitton et Fils S.A.</u>, 481 U.S. 787, 807 (1987)).

To the extent that the Court's Order reflects a concern that a government employee (and not the defendant) may at some point improperly disclose the identity of the victim in this case, resort to the Court's supervisory powers is also unnecessary.  As an initial matter, the information that is the subject of the Court's Order is not, in and of itself, classified or confidential information subject to the secrecy provision of Federal Rule of Criminal Procedure 6(e) or other similar statutory rules of secrecy.  <u>See</u> <u>generally</u> Fed. R. Crim. Proc. 6(e); 18 U.S.C. §2511, <u>et seq.;</u> 50 U.S.C. Chap. 36.[2]  Moreover, as discussed in greater detail in section III <u>infra</u>, the Crime Victims' Rights Act expressly provides for redress for violations of its requirement that the government use its "best efforts" to protect the victim. Thus, the Court's Order is unnecessary in light of a specific statutory mechanism for ensuring that the government protects the rights of the victim in this matter.  <u>See</u> <u>Horn</u>, 29 F.3d at 760; <u>see also</u> Section III, <u>infra</u>.

---

[2]  Similarly, Local Rule 83.2B does not authorize the Court's Order.  Local Rule 83.2B ("Rule") provides that in "a widely publicized or sensational criminal trial" the Court may "issue a special order governing such matters as extrajudicial statements by parties." D. Mass. R. 83.2B. The Rule, however, governs pre-trial proceedings – and not post-trial matters such as comments post-conviction or during a defendant's term of supervised release. Indeed the Rule's intent is to prevent interference "with the right of the accused or the litigants to a fair trial by an impartial jury." <u>Id.</u>

The Order here is not necessary for more practical reasons as well.  As the government informed the Court, it previously decided, independent of the Court's Order, to maintain a list of personnel who know the victim's identity.  This should assure the Court of the government's intent to protect the victim's identity from disclosure, similar to and consistent with the assurances the Court seeks in its Order.  This should also underscore for the defendant the government's interest in the non-disclosure provision and its determination to take seriously any unauthorized disclosure of the victim's identity.

### III. The Crime Victims' Rights Act does not provide the Court with the authority to issue its February 23, 2009 Order.

The Crime Victims' Right Act ("CVRA") requires the United States Attorney's Office to treat the victim in this case with "respect for [his] dignity and privacy."  18 U.S.C. §3771(a)(8). But the CVRA does not automatically provide a crime victim with a complete cloak of protection for all of the private facts – including the victim's identity – that may be revealed to the government in connection with an investigation.  Nor does it provide the Court with the authority to require the government to take particular steps, such as those set forth in the Court's Order, to ensure a victim's privacy.

To the contrary, the CVRA expressly limits the government's obligations to making "best efforts."  18 U.S.C. §3771(c)(1) ("Officers and employees of the Department of Justice and other

departments and agencies of the United States engaged in the detection, investigation, or prosecution of crime shall make their *best efforts* to see that crime victims are notified of, and accorded, the rights described in [the CVRA].") (emphasis added). The CVRA, in fact, recognizes that the rights of victims cannot be codified absolutely and contemplates that the government cannot be required to offer absolute guarantees of privacy. See generally 18 U.S.C. §3771(d)(6)("Nothing in [the CVRA] shall be construed to authorize a cause of action for damages, or to create, to enlarge, or to imply any duty or obligation to any victim or other person for the breach of which the United States or any officers or employees could be held liable in damages."). By limiting liability for alleged violations of the statue and by limiting the government's duty to making "best efforts," the CVRA recognizes that when victims report crimes to the government they cannot expect an absolute guarantee of privacy – particularly when the information they provide is not otherwise classified or secret. See id.; see also Section II, supra.

Here, the government has already made best efforts to respect the victim's privacy, and will continue to do so. The government, furthermore, has notified the Court of its undertaking to collect the names of all government employees who know the victim's identity in this case. These are appropriate steps undertaken in order to (a) impress upon the defendant that, if she were to breach

her conditions of probation, she is unlikely to successfully claim that someone else disclosed the victim's name; and (b) increase the likelihood of establishing, in the event of a public disclosure of the victim's name, that the defendant was the source of that public disclosure.

The Court's Order, however, requires the government to take *additional* steps beyond the "best efforts" contemplated by the CVRA, including requiring government employees to sign affidavits which subject them to the possibility of criminal punishment should they be found to have disclosed the victim's name under circumstances that the Court deems unnecessary.  This goes far beyond what the CVRA requires of the government in these circumstances.  See United States v. Rubin, 558 F. Supp. 2d 411, 427 (E.D.N.Y. 2008) (refusing to prohibit the government from raising a legitimate argument "simply because the arguments may hurt a victim's feelings or reputation").

Indeed, the CVRA expressly provides that the government may disclose private information about a victim in the exercise of its "prosecutorial discretion."  See 18 U.S.C. §3771(c)(6) ("Nothing in this chapter shall be construed to impair the prosecutorial discretion of the Attorney General or any officer under his direction.").  The CVRA entrusts the Department of Justice, and not the Court, with deciding how and when it is necessary to use this information.  See id.  Thus, the Court's Order, which subjects to

judicial review law enforcement's determination of what are legitimate government efforts which warrant disclosure of the victim's name, goes far beyond the CVRA.  See id.

Most importantly, the Court's Order, which also subjects government employees who know the victim's identity to possible civil or criminal contempt if the victim's identity is revealed, contravenes the CVRA's enforcement mechanisms.  Congress allocated the responsibility of ensuring internal compliance with the CVRA specifically to the Department of Justice, and not the Court.[3]  See 18 U.S.C. §3771(f)(2)(A) (requiring the Department of Justice to "designate an administrative authority within the Department of Justice to receive and investigate complaints relating to the provision or violation of the rights of a crime victim"); see also 18 U.S.C. §3771(f)(2)(D) ("[T]he Attorney General, shall be the final arbiter of the complaint, and * * * there shall be no judicial review of the final decision of the Attorney General by a complainant."); 28 C.F.R. 45.10  (providing for specific procedures

_____

[3] The government does not here argue that the Court does not have the authority under the CVRA to regulate other rights provided under the CVRA, including the right of the victim to be heard at certain criminal proceedings.  See 18 U.S.C. §3771(b)(1).  Rather, the focus of the government's argument in this case concerns the specific right implicated by the Court's Order, namely the victim's right to dignity and privacy post-conviction.  See generally Rubin, 558 F. Supp. 2d at 427; see also United States v. McVeigh, 106 F.3d. 326 (10th Cir. 1997)("The statute clearly pledges only the 'best efforts' of certain executive branch personnel to secure the rights listed. * * * The district court judge, a judicial officer not bound in any way by this pledge, could not violate the Act."); United States v. Turner, 367 F. Supp. 2d 319, 323 (E.D.N.Y. 2005).

to enforce provisions of the CVRA and stating that victim may "not seek judicial review" of the Department of Justice's findings).

If it were determined that a government employee violated the duty to make best efforts to protect a victim's privacy in a particular case, regulations promulgated pursuant to the CVRA provide for potentially severe consequences for such violations (including termination).  See 18 U.S.C. §3771(f)(2)(C); 28 C.F.R. 45.10.  Thus, Congress has already provided a means by which aggrieved victims may challenge the government's failure to use best efforts to accord them their right to privacy, as well as appropriate penalties for such failure.

**IV.  Conclusion.**

For the foregoing reasons, the government respectfully requests that the Court rescind its February 23, 2009 Order in light of the United States' representation to the Court that it has, in its exercise of prosecutorial discretion, assembled and will maintain, a list of government employees who have learned the victim's identity.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:  */s/ Cynthia A. Young*
CYNTHIA A. YOUNG
PAUL G. LEVENSON
JAMES P. DOWDEN
Assistant U.S. Attorneys
(617) 748-3100

19

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Cynthia A. Young
CYNTHIA A. YOUNG
Assistant United States Attorney


Date: March 16, 2009

20